Manuel Garcia AGUILAR, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00075–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 13, 1995.

Decided Jan. 3, 1996.

Gary Krupkin, Dallas, for Appellant.

Sue Korioth, Assistant District Attorney, Dallas, Carolyn Fitz–Gerald Levin, Assistant District Attorney, Dallas, for the State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Manuel Aguilar was convicted of resisting arrest. He appeals, bringing one point of error in which he contends that the trial court erred by denying his requested jury instruction on excessive force used during his arrest.

The undisputed evidence shows that the arresting officer first saw Aguilar hanging from the door of a moving automobile driven by Aguilar's girlfriend. Aguilar and his friend had eaten dinner at a restaurant. During the meal an argument began and the girlfriend, Barbara Smith, decided to leave the restaurant without Aguilar. The two continued to argue in the parking lot, and then Smith began to drive away in her automobile. Aguilar tried to climb into the car through the driver's door that remained open as Smith drove away.

From this point the testimony conflicts. The arresting officer testified that he saw Smith leaving the parking lot with Aguilar hanging from the door and that he stopped the automobile. When they stopped the car, Aguilar was sitting in the back seat. Officer Nash took Smith to one side to question her. Another officer, Officer Guzman, testified that he took Aguilar out of the car and began to question him. The officer testified that

Aguilar appeared to be intoxicated[1] and that he was initially cooperative, but quickly became argumentative and then combative when Officer Guzman told him he was under arrest. Officer Nash testified he heard Aguilar say, "I'm not going to jail." Guzman testified that Aguilar pulled away from him to avoid being handcuffed and that he resisted arrest by trying to strike the officer with his hands and possibly his elbows. Officers Nash and Guzman subdued Aguilar by forcing him to the ground in the middle of the street. They testified that he continued violently to resist arrest and that they shot pepper spray in his face, at which point he ceased his resistance. During the struggle, two additional officers arrived.

Smith testified that as Officer Nash began giving her field sobriety tests, which she passed, she saw three or four uniformed Dallas police officers descend on Aguilar as he got out of her car, forcing him to the ground and pressing his face against the concrete street. She testified that she protested the force being used against Aguilar and that Officer Nash made her move to a position on the other side of the car, where she could not directly see what was occurring. She testified that she never saw Aguilar resist arrest and that she did not hear him make any statement. She also testified that Aguilar was not intoxicated at the time of his arrest and that he had consumed only "a couple of drinks" during the evening.

Aguilar contends that sufficient evidence of excessive force justifying his self-defense was shown to entitle him to a jury instruction on the issue. Aguilar submitted a proposed jury instruction tracking the self-defense statute. TEX.PENAL CODE ANN. § 9.31(c) (Vernon 1994). The court refused to give the instruction. The requested instruction would have informed the jury that force to resist an arrest is justified if, before the person being arrested offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest, and when and to the degree such person reasonably

believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary. This language is taken almost verbatim from Section 9.31(c). The requested instruction also included language that defined reasonable belief and applied the language to the facts of this particular case.

■ An instruction on a defensive issue must be given if there is any evidence to support the issue, regardless of how strong or weak the evidence may be. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993); *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex.Crim.App. [Panel Op.] 1978). The credibility of the evidence, or whether it is controverted or conflicts with other evidence, may not be relied upon to deny the instruction. *Woodfox v. State*, 742 S.W.2d 408, 409 (Tex.Crim.App.1987); *see Evans v. State*, 876 S.W.2d 459 (Tex.App.—Texarkana 1994, no pet.).

The State argued that excessive force was an affirmative defense that Aguilar was required to prove by a preponderance of the evidence. Affirmative defenses to criminal offenses are specified by the enacting statutes. TEX.PENAL CODE ANN. § 2.04 (Vernon 1994).[2] The justification based on excessive force is specifically defined as a defense by TEX.PENAL CODE ANN. §§ 9.02, 9.31(a) (Vernon 1994). The Penal Code further requires that if the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted. TEX.PENAL CODE ANN. § 2.03(d) (Vernon 1994).

■ The question we must determine is whether there was evidence to support the submission of this defensive issue to the jury. Smith testified that she was no more than eight to ten feet away from Aguilar while the events occurred. She said that, although she was talking with the officer who was giving her a sobriety test, she saw Aguilar get out

---

1. No intoxication charges were brought against Aguilar.

2. See, for example, TEX.PENAL CODE ANN. § 8.01 (Insanity), § 8.05 (Duress), § 15.04 (Renuncia-

tion), § 20.02 (False Imprisonment), § 20.03 (Kidnapping), and § 21.11 (Indecency with a Child) (Vernon 1994).

of the back seat of her car and that, "then, you know, all of a sudden, he was on the ground and um, they were on top of him." She testified that she did not see Aguilar fight or try to strike the officers and that she did not see him physically resist them in any way. She conceded at one point on cross-examination that she had been directing her attention to the officer who was questioning her and that "I don't know everything that happened, but I know some of the things." Then, however, she further testified:

Q. The question was what you really saw was the officer ask the defendant out of the car, isn't that true, you saw that?

A. I didn't see that, you know, them ask him, you know, he was out of the car and then he was on the ground.

Q. And that is what you saw?

A. Right.

Q. Out of the car and on the ground?

A. Right.

The trial court concluded that self-defense and excessive force were not raised by the evidence because Smith was not in a position to see the events occurring before the officers forced Aguilar to the pavement. Smith testified unequivocally, however, that she saw when Aguilar got out of the car and was quickly thrown to the pavement by the officers' force. The officers testified that Aguilar resisted their attempts to arrest him only after he was outside the car and after he had begun talking to them. There is no testimony that Aguilar resisted arrest while he was still in the car. The State's suggestion that he might have resisted arrest while inside the car is speculation unsupported by any evidence.

■ We conclude that Smith's testimony, together with the officers' testimony that Aguilar did not resist arrest until he was out of the car, raises an inference that the officers used prior excessive force to effect Aguilar's arrest. Aguilar properly requested an instruction, and he was entitled to it. Reversal is required if this error was calculated to injure Aguilar. Failure to give a defensive instruction on an issue raised by the evidence, where the error is properly preserved, will call for reversal unless the error is harmless. *Abdnor v. State,* 871 S.W.2d 726, 732

(Tex.Crim.App.1994) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)). The presence of any harm, regardless of degree, is sufficient to require a reversal of the conviction. The burden of proof is on the appellant to persuade the reviewing court that he suffered some actual harm as a consequence of the charging error. *Abdnor v. State,* 871 S.W.2d at 732.

■ Smith testified that she did not see Aguilar make any threatening or resistant moves to the officers until the officers threw him to the ground, and that they were scuffling on the ground afterwards. While Smith did not see all events that occurred, she said she saw the beginning of the confrontation when Aguilar got out of the car and was thrown to the ground. This testimony at least raises an inference that the officers used prior force to effect the arrest before Aguilar began to resist. In that situation, Aguilar was entitled to the jury instruction, regardless of the strength or the credibility of the evidence raising the issue. Since prior force was Aguilar's only claimed defense, we cannot say that the refusal of the jury instruction was harmless.

For the reasons stated, the judgment is reversed and the cause is remanded for a new trial.