In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00094-CR


______________________________




JETT BRUCE SANDERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28275-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Jett Sanders appeals from his conviction by a jury for felony failure to appear in court after
being released on bail. His conviction was enhanced by two prior offenses, and the jury assessed his
punishment at life imprisonment. On appeal, Sanders contends the trial court committed reversible
error at the punishment phase of trial by providing the jury with a reasonable doubt charge in
connection with only one of several extraneous offenses. 

 Sanders objected to the jury charge because it referred specifically to an extraneous DWI
offense that allegedly occurred on October 14, and he asked the court for a more general definition
that would also include other extraneous offenses. The court overruled the objection because "the
only one in question is October 14th." The State argues the objection was inadequate to preserve
the claimed error for review because Tex. Code Crim. Proc. Ann. art. 36.15 (Vernon Supp. 2002)
requires special requested charges to be provided either in writing or by dictation into the record. 

 In order to preserve error relating to the jury charge, there must either be an objection or a
requested charge. Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996); Flores v. State,
42 S.W.3d 277, 280 (Tex. App.-Corpus Christi 2001, no pet. h.); Mendenhall v. State, 15 S.W.3d
560, 566 (Tex. App.-Waco 2000, pet. granted); Arana v. State, 1 S.W.3d 824, 826 (Tex.
App.-Houston [14th Dist.] 1999, pet. ref'd). The Texas Court of Criminal Appeals has interpreted
Articles 36.14 and 36.15 as dealing with those two distinct situations: an objection to the charge and
a requested special instruction, respectively. Vasquez, 919 S.W.2d at 435; Frank v. State, 688
S.W.2d 863 (Tex. Crim. App. 1985); see Tex. Code Crim. Proc. Ann. arts. 36.14, 36.15 (Vernon
Supp. 2002). Article 36.14 requires the defendant to object and obtain an adverse ruling to preserve
a claim of error. Under Article 36.15, if the defendant requests a special instruction, no objection
is required to preserve error. McKinney v. State, 12 S.W.3d 580, 582 (Tex. App.-Texarkana 2000,
pet. ref'd); Powers v. State, 985 S.W.2d 596, 598 (Tex. App.-Texarkana 1999, 1 pet. ref'd, 1 pet.
dism'd). 

 We conclude the claimed error was preserved for review. This contention differs from the
typical scenario because the evidence was not of an "extraneous crime or bad act," but was instead
the "prior criminal record" of the defendant. The first question, then, is whether the statutory
requirement of proof beyond a reasonable doubt applies.

 The contention is controlled by the language of Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(a)(1) (Vernon Supp. 2002). Section 3(a)(1) provides in relevant part:

 [After a finding of guilt,] evidence may be offered by the state and the defendant as
to any matter the court deems relevant to sentencing, including but not limited to the
prior criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he is
being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal
Evidence, any other evidence of an extraneous crime or bad act that is shown beyond
a reasonable doubt by evidence to have been committed by the defendant or for
which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act.


Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Emphasis added.).

 The language of the statute allows evidence of the prior criminal record of the defendant and
any other evidence of an extraneous crime or bad act shown beyond a reasonable doubt. The
"reasonable doubt" language in the statute is limited to the "any other evidence" portion of the
statute. Thus, Article 37.07, § 3(a)(1) does not require the reasonable doubt language to be applied
to the prior criminal record, and the cases under that statute that require a separate instruction on that
type of evidence do not apply to this situation. (1)

 Caselaw requires that the State has the burden of proof beyond a reasonable doubt as to prior
convictions alleged for enhancement of punishment. Ex parte Augusta, 639 S.W.2d 481 (Tex. Crim.
App. 1982); Williams v. State, 899 S.W.2d 13, 14 (Tex. App.-San Antonio 1995, no pet.). (2) Thus,
an attack against the sufficiency of those convictions is a contention that the evidence was not
sufficient. See Beck v. State, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986) (discussing the types of
evidence that can be considered sufficient to prove the prior convictions). 

 The jury charge contained language requiring the jury to find, beyond a reasonable doubt, that
Sanders was convicted of the two enhancement felonies. That language does not, however, carry
over to the additional convictions offered by the State-and not offered for enhancement purposes. 

 Sanders does not attack the sufficiency of the evidence to show he was finally convicted of
those other crimes. He argues instead that a special jury instruction is required that would set a
burden of proof for the State to meet as to those other convictions, as well as to the enhancement
convictions and the "extraneous offenses and bad acts." As we have already explained, Article
37.07, § 3(a)(1) does not require such an instruction. The more general section, Section 3(b),
requires the court to give any additional necessary instructions and also states that "the order of
procedure and the rules governing the conduct of the trial shall be the same as are applicable on the
issue of guilt or innocence." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(b) (Vernon 1981).

 The general burden of proof set out in Tex. Pen. Code Ann. § 2.01 (Vernon 1994) requires
proof beyond a reasonable doubt in order to convict a defendant. See also Tex. Code Crim. Proc.
Ann. art. 38.03 (Vernon Supp. 2002). 

 The necessary proof of extraneous offenses/bad acts and the proof necessary to show a prior
criminal record are entirely different. Extraneous offenses/bad acts are matters for which the
defendant has never been convicted. The State is therefore required to prove that the defendant
actually committed those acts. Proof of a prior criminal record requires no such level of evidence. 
The State is not required to prove the defendant committed the crime, but is required to adequately
identify him or her as the person who was convicted of the crime at an earlier date. 

 Although historically there has been substantial litigation about the sufficiency of proof, none
of those cases specifies the level of evidence required to prove the prior conviction. In other words,
neither the statute nor the caselaw requires that the identification must be beyond a reasonable doubt. 
Instead, the cases applying that section set out in some detail the type of proof that is sufficient to
prove the prior conviction. Beck, 719 S.W.2d 205; Reese v. State, 905 S.W.2d 631, 635 (Tex.
App.-Texarkana 1995, pet. ref'd, untimely filed); see Elizalde v. State, 507 S.W.2d 749, 752 (Tex.
Crim. App. 1974), overruled on other grounds, Bullard v. State, 533 S.W.2d 812, 816 (Tex. Crim.
App. 1976) (holding State had burden of proving that the two defendants were same person); Alridge
v. State, 732 S.W.2d 395, 398 (Tex. App.-Dallas 1987, pet. ref'd) (fingerprint identification
insufficient evidence to prove identity).

 We have been directed to no cases requiring an instruction to the jury that it can only consider
prior criminal convictions if the State proves them beyond a reasonable doubt. Unlike the
guilt/innocence phase of trial, at the punishment phase, there is no general charge requiring the jury
to determine all matters beyond a reasonable doubt. As described above, based on statutory
authority, there are specific instructions to determine beyond a reasonable doubt whether extraneous
offenses/bad acts were committed and also to determine whether the two prior felonies used by the
State for enhancement were also committed by this particular defendant. The "prior criminal
offenses" not used for enhancements falls through the cracks. 

 We conclude that under the analysis set out above, although the State is required to provide
clear proof that this particular defendant was the individual actually convicted of the prior crimes,
the statute does not require a reasonable doubt instruction. The contention of error is overruled.

 Even if we were incorrect in this conclusion, however, we find no error. A defendant's right
to a jury instruction informing the jury that it may not consider extraneous offenses/bad acts unless
it is convinced beyond a reasonable doubt that the acts and offenses are attributable to the defendant
is not constitutional in statute, but purely procedural. Huizar v. State, 12 S.W.3d 479, 481 (Tex.
Crim. App. 2000). We conclude that any right to this type of instruction would thus be
indistinguishable on any reasonable grounds from the extraneous offense instruction, and likewise
conclude that this is purely charge error and reviewable under Almanza. Almanza v. State, 686
S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g).

 The defendant objected at trial; thus, reversal would be required if this error was calculated
to injure the defendant. Id. at 171; Aguilar v. State, 914 S.W.2d 649, 651 (Tex. App.-Texarkana
1996, no pet.). The presence of any harm, regardless of degree, is sufficient to require reversal. 
Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). However, the defendant has the
burden of proof to persuade this court that he suffered some actual harm as a consequence of the
charging error. Id.; see also Belyeu v. State, 791 S.W.2d 66, 75 (Tex. Crim. App. 1989); LaPoint
v. State, 750 S.W.2d 180, 191 (Tex. Crim. App. 1986) (op. on reh'g); Gornick v. State, 947 S.W.2d
678, 681 (Tex. App.-Texarkana 1997, no pet.).

 Sanders also suggests that the trial court's action in submitting an instruction on one offense,
but not doing so for the others, improperly singles out testimony and leaves the impression that the
other evidence is beyond dispute because it was not contested or controverted, citing Tew v. State,
551 S.W.2d 375 (Tex. Crim. App. 1977). The court's comment in response to the objection makes
it clear the court believed the charge was unnecessary because the convictions were not in question.

 A suggestion in a jury charge that certain evidence is true or untrue is a comment on the
weight of the evidence. Russell v. State, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988); Dean v. State,
995 S.W.2d 846, 849 (Tex. App.-Waco 1999, pet. ref'd). A court's charge in a criminal case may
not assume that any fact has been proved against the defendant, however strong the evidence may
be. See Marlow v. State, 537 S.W.2d 8, 9 (Tex. Crim. App. 1976); Dean, 995 S.W.2d at 849. The
State has the burden to prove the additional convictions.

 We now turn to the harm analysis. Each conviction involved here was shown by penitentiary
packets and certified copies showing Sanders's prior convictions for unauthorized use of a motor
vehicle in 1985, criminal mischief in 1985, misdemeanor possession of marihuana in 1987, DWI or
driving with license suspended in 1988, misdemeanor DWI in 1989, felony DWI in 1994, DWI third
offense in 1996, and misdemeanor failure to stop and give information in 1999. The penitentiary
packets identify him in various ways: through pictures or fingerprints, his date of birth, and/or his
driver's license number. Detective Dan Reigstad, the State's fingerprint expert, testified that six of
the documents offered to show the prior convictions contained fingerprints which he identified as
Sanders's. 

 Unlike the October 2000 offense, Sanders did not attempt in any way to attack those
convictions or suggest any reason they should be disregarded. He did not concede the validity of the
convictions, but he also did not attack their validity. 

 Under these facts, we are not persuaded that any degree of actual harm has been shown to
exist. Accordingly, the error does not require reversal.

 The judgment is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: December 31, 2001

Date Decided: January 29, 2002


Publish
1. This is also not a situation questioning the propriety of the admission of the evidence about
the prior conviction under Tex. R. Evid. 901 or 902.
2. Tex. Pen. Code Ann. § 12.42 (Vernon Supp. 2002) requires the State to "show" that a
defendant has been previously convicted in order to enhance the punishment. This is not an
enhancement situation, so that statute does not directly apply to these facts.



60;          Escamilla argues the trial court erred in admitting testimony "made by a pediatric psychiatrist
regarding something he has termed Child Abuse Accommodation Syndrome." He then argues that
such evidence is inadmissible based on Perez v. State, 25 S.W.3d 830 (Tex. App.—Houston [1st
Dist.] 2000, no pet.), and Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). We disagree
for several reasons.
            One primary reason for disagreeing with Escamilla's argument is that no witness in this case
testified concerning a psychiatrist's theory of Child Abuse Accommodation Syndrome. This
argument apparently emanates from Perez. In Perez, a witness, who had not seen the victim,
testified about her interpretation of the theories of Dr. Ronald Summit, a pediatric psychiatrist. The
witness testified that Dr. Summit, who also had never seen the victim, had written articles
concerning common reactions by victims of sexual assault, such as secrecy, helplessness,
accommodation, delayed disclosure, and disclosure. Perez, 25 S.W.3d at 833. The court found the
witness did not qualify as an expert to render an opinion regarding Dr. Summit's theories. The facts
of this case differ significantly—here, Coats did not describe the findings of a psychiatrist or attempt
to describe a syndrome, but explained her role as a sexual assault nurse examiner, the physical
findings she encountered, and that her training and experience made her aware that some children
delay reporting this crime for several reasons. In Hernandez, the holding of Perez was limited to the
witness' testimony about a psychiatrist's theories of pediatric psychiatry and did not address the
admissibility of that witness' own opinions based on her own experiences as an expert. Hernandez
v. State, 53 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (allowed same
witness to testify to "Child Abuse Accommodation Syndrome" that had been found to present
reversible error in Perez because in Hernandez, she expressed her own opinion, not theories of
another). Perez is not applicable to this case. 
            Escamilla also argues that the test of admissibility of this type of evidence is governed by
Kelly. See Kelly, 824 S.W.2d 568. The Kelly test of admissibility involved the consideration of
seven factors. Escamilla analyzes in his brief the evidence presented in light of the seven Kelly
factors and concludes that Coats' testimony falls short of meeting the requirement of Kelly. 
However, Escamilla fails to recognize that the Texas Court of Criminal Appeals has, since Kelly,
applied a different test to nonscientific expert testimony (i.e., that involving technical or other
specialized knowledge). The general principles of Kelly apply, but the specific factors outlined in
Kelly may or may not apply, depending on the context. Nenno v. State, 970 S.W.2d 549, 561 (Tex.
Crim. App. 1998), overruled in part on other grounds by State v. Terrazas, 4 S.W.3d 720, 727 (Tex.
Crim. App. 1999). When addressing fields of study aside from the hard sciences, such as the social
sciences or fields that are based primarily on experience and training as opposed to the scientific
method, Kelly's requirement of reliability applies, but with less rigor than to the hard sciences. 
Nenno, 970 S.W.2d at 561. The reliability of "soft" scientific evidence may be established by
showing that (1) the field of expertise is a legitimate one, (2) the subject matter of the expert's
testimony is within the scope of that field, and (3) the expert's testimony properly relies on and/or
utilizes the principles involved in the field. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim.
App. 2000); Nenno, 970 S.W.2d at 561. 
            We will apply the test set out in Nenno to determine the admissibility of Coats' testimony. 
We point out that the only objection concerning the expertise of Coats was made when Coats
originally began to discuss a delayed outcry. Escamilla only objected as to relevance concerning
Coats' testimony of the subject of "grooming" a child; therefore, the objection as to Coats' status as
an expert is not preserved as to that testimony. See Tex. R. App. P. 33.1(a). 
            (1) Is the field of expertise a legitimate one? 
            In Hernandez, the Houston First District Court stated that the field of expertise
(characteristics and dynamics of sexually abused children) was "certainly" a legitimate field as
recognized by Duckett v. State, 797 S.W.2d 906 (Tex. Crim. App. 1990). Hernandez, 53 S.W.3d
at 751. Our law has recognized this field of expertise as a legitimate one. Yount v. State, 872
S.W.2d 706, 708 (Tex. Crim. App. 1993); Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App.
1993); Kirkpatrick v. State, 747 S.W.2d 833, 835 (Tex. App.—Dallas 1987, pet. ref'd) (expert
testimony admissible about general behavioral traits of child victims, e.g., delay in reporting
incident); Hernandez, 53 S.W.3d at 751.
            (2) Is the subject matter of Coats' testimony within the scope of her field of expertise? 
            Coats is a registered nurse and is the director of surgical services at the Llano Hospital. She
is also the sexual assault nurse examiner (SANE) certified by the Texas Office of the Attorney
General. To become certified by the attorney general, she was required to have ninety-six hours of
clinical training, which consists of doing examinations, and she must also perform the required
number of examinations every two years on children and adults. She received her initial training
eleven years ago and has been doing sexual assault examinations since. She had previously testified
many times. Coats explained that her examination consists of taking a patient history, a head-to-toe
examination, a detailed genital examination looking for trauma, and the collection of forensic
evidence. She received training regarding the type of phenomenon that sexually assaulted children
exhibit. The three nurses in the SANE program do a quality assurance by reviewing the others'
charts for each examination, they attend peer review sessions, and a medical doctor reviews the
quality assurance. With her eleven years of experience with child sexual assault victims, Coats has
abundant personal observation and experience of common characteristics of sexually assaulted
children. It is well within her field of expertise and training to study and observe behavior of
affected children and to form the opinion that, for various reasons, children may not report this crime
immediately. "Experience alone may provide a sufficient basis for an expert's testimony." Id. at 751
(citing Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998)). Coats did not
attempt to describe a medical or psychiatric syndrome, but presented evidence to allow the
conclusion that her training and experience provided an explanation for the reasons children delay
reporting sexual assaults. We find the subject matter of Coats' testimony within the scope of her
field of expertise. 
            (3) Does Coats' testimony properly rely on or utilize the principles involved in the
field?
 
            Coats trained as a registered nurse and had further training as a sexual assault examiner. It
is important to realize the scope of the testimony in dispute. Coats did not attempt to testify
regarding an overall profile or description of the characteristics of sexually assaulted children. 
Rather, her testimony was limited to basically describing what she had seen and experienced over
eleven years of conducting examinations of persons who had allegedly been sexually assaulted. 
Particularly, her testimony was that it was common for children who had been sexually assaulted to
delay reporting the assault because of fear or because such a report could have life-changing
consequences. This case illustrates this very point by the testimony of the child in question—after
reporting the assault to her sister, she had very mixed feelings about whether she wanted her sister
to tell their mother (i.e., "In a way I did, but in a way I didn't want her to say anything."). One of the
principles of this field would require the nurse/interviewer to accurately record the history from the
victim, physical findings, and observations of the child, and then to properly report them. Based on
Coats' years of experience with similar children, Coats could testify that it was common for children
to delay reporting this crime for the reasons she had observed. We find her testimony meets the
reliability requirement and hold that the trial court did not commit error by allowing her testimony. 
Issue 2—Did the trial court err in failing to delay the trial to allow for a defense witness? 

            Escamilla argues that, during the punishment phase, he had a witness who had been brought
to the courthouse by ambulance and that he had requested the trial court to delay the trial for a few
minutes. The trial court denied the request. Escamilla argues that such denial showed that the trial
court had already decided the issue of punishment and failed to consider the full range of
punishment. 
            After the State rested, the following occurred:
THE COURT: State has rested, [defense counsel]. Do you have witnesses?
 
[Defense counsel]: Judge, let me run downstairs and see who's arrived. 
 
(Break was taken)
 
[Defense counsel]: Judge, the one witness that I have, that's what the
ambulance is here for, and they've treated her and she needs a little bit more time
before she can come up the steps. Can you give me about another five minutes? 

                        THE COURT: No.

                        [Defense counsel]: We'll rest, Judge.

                        [State's counsel]: We close. 

            The only authority cited for Escamilla's argument is Ex parte Brown, 158 S.W.3d 449 (Tex.
Crim. App. 2005). In Brown, the trial court told the defendant that, if he violated community
supervision, the court would impose the maximum punishment and, in fact, did so. The Texas Court
of Criminal Appeals held that those actions indicated the trial court was prejudging the punishment
issue, and reversed. That authority has no bearing on the facts of this case. In essence, Escamilla
has presented no authority for the argument. Escamilla does not argue that the trial court abused its
discretion in denying the requested delay or that he was denied due process of law. No evidence was
presented regarding the content of the testimony of the witness. On appeal, the argument is
presented that the "only conclusion that can be drawn from such a refusal to grant a five (5) minute
delay is that the Judge had already made up his mind regarding Appellant's term of confinement." 
There may have been numerous reasons for the trial court's actions, and it certainly cannot be
deduced that the "only" conclusion is that the court had already determined the punishment to be
assessed and did not consider the full range of punishment. 
            Further, an oral motion for a continuance or postponement is not a statutory motion for
continuance and is addressed only to the equitable powers of the court. See Darty v. State, 149 Tex.
Crim. 256, 193 S.W.2d 195 (1946). It is reviewable only for abuse of discretion. See Vega v. State,
898 S.W.2d 359, 361 (Tex. App.—San Antonio 1995, pet. ref'd). Here, Escamilla presented no
information to the trial court concerning the nature of the testimony of the witness, whether it was
unique, or any other information regarding the necessity for the witness' testimony. 
            The trial court has the discretion to grant or deny continuances or delays of the trial and did
not err in denying the motion.
            We affirm the judgment of the trial court.



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          January 20, 2006
Date Decided:             January 31, 2006

Do Not Publish