ACCEPTED
06-15-00064-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/14/2015 5:46:56 PM
DEBBIE AUTREY
CLERK

**06-15-00064-CR**

| | | |
|---|---|---|
| **JONATHAN RAY SHEPHERD** | § | **IN THE SIXTH COURT OF** |
| | § | |
| **vs.** | § | **APPEALS** |
| | § | |
| **STATE OF TEXAS** | § | **TEXAS** |

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/14/2015 5:46:56 PM
DEBBIE AUTREY
Clerk

# APPELLANT'S BRIEF

**APPELLANT'S BRIEF; 06-15-00064-CR**

# The Identities of Parties and Counsel

Appellant is Jonathan Shepherd TDC # 01990774,
W. J. "Jim" Estelle Unit
264 FM 3478
 Huntsville, TX 77320-3320


Mr. Shepherd is represented by

Russell Wilson II
1910 Pacific Ave #15100,
Dallas, Texas 75201
(469) 573-0211
russell@russellwilsonlaw.com

The Appellee is the State of Texas

The State of Texas is represented by

Upshur County District Attorney
Billy W Byrd
405 North Titus
Gilmer, TX 75644
billy.byrd@countyofupshur.com

Assistant District Attorney
Natalie A. Miller
405 North Titus
Gilmer, Texas 75644
natalie.miller@countyofupshur.com


**APPELLANT'S BRIEF; 06-15-00064-CR**

# Table of Contents

The identities of Parties and Counsel..................................................................2

Table of Contents .............................................................................................3

Index of Authorities .........................................................................................4

Statement of the Case........................................................................................6

Statement Regarding Oral Argument ................................................................6

Issues Presented ...............................................................................................7

Statement of Facts ............................................................................................8

Summary of Argument .....................................................................................11

A.  TRIAL COURT FAILED TO HONOR DEFENDANTS SIXTH
AMENDMENT CONFRONTATION RIGHTS WHEN IT RELIED UPON TEX.
CODE CRIM. P. 38.49 .....................................................................................12

B.  REFUSAL TO GIVE LESSER INCLUDED JURY INSTRUCTION OF
FELONY MURDER...........................................................................................22

C.  ADMISSION OF STATEMENT DESPITE LACK OF 38.22 WARNINGS AT
THE INITATION OF THE INTERROGATION...................................................27

# Index of Authorities

**Cases**

.

**Abdnor v. State, 871 S.W.2d 726, 732 (Tex.Crim.App.1994).** ........................24

**Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App.1986)** ...........................24

**De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.2008).** ........................16

**Feldman v. State, 71 S.W.3d 738, 750 (Tex.Crim.App.2002).** ........................22

**Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969);** ......................................................................................29

**Fuentes v. State, 991 S.W.2d 267, 272 (Tex.Crim.App.), cert. denied, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999)** ................................22

**Giles v. California, 554 U.S. 353, 376, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008);** ...16

**Green v. State, 934 S.W.2d 92, 99 (Tex.Crim.App.1996).** ..............................29

*Hudson v. State 449 S.W.3rd 495 (Tex. Crim. 2014)* ...............................................25

*Hudson v. State, 366 S.W.3d 878, 891–92 (Tex.App.-Texarkana 2012), rev'd, 394 S.W.3d 522 (Tex.Crim.App.2013);* ................................................25

**Jeffley v. State, 38 S.W.3d 847, 860 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd)** .............................................................................................29

*McCarty v. State, 227 S.W.3d 415, 417 (Tex.App.-Texarkana 2007),* ..................15

**Ngo v. State, 175 S.W.3d 738, 750 n. 48 (Tex.Crim.App.2005)**.........................**24**

*Saunders v. State 913 S.W.2d 564, 569–74 (Tex.Crim.App.1995)* .....................**25**

**Shelby v. State, 819 S.W.2d 544, 546 (Tex.Crim.App.1991**...............................**15**

**Statutes**

*Tex. Code Crim P.  38.49(a)* ............................................................................ 20

**U.S. Const. amend. VI**........................................................................................ 15

**U.S. Const. amend. VI;**...................................................................................... 15

## Statement of the Case

This is an appeal of a capital murder conviction. Appellant's case was tried before a jury in Upshur County Texas on or about April 15, 2015.

## Statement Regarding Oral Argument

The appellant does not request oral argument unless the State request oral argument.

**APPELLANT'S BRIEF; 06-15-00064-CR**

## Issues Presented

1. WHETHER TRIAL COURT VIOLATED DEFENDANT'S CONFRONTATION RIGHTS IN REACHING ITS CONCLUSION OF "FORFEITURE BY WRONG DOING" UNDER TEXAS CODE CRIM. P. 38.49.

2. WHETHER TRIAL COURTS REFUSAL TO CHARGE JURY ON LESSER INCLUDED OFFENSE OF FELONY MURDER IS JUSTIFIABLE IN LIGHT OF THE EVIDENCE

3. WHETHER DETERMINATION THAT STATE'S FAILURE TO COMPLY WITH PROVISIONS OF TEX CODE CRIM P. § 38.22 IS EXCUSEABLE

**APPELLANT'S BRIEF; 06-15-00064-CR**

## Statement of Facts

On September 26, 2013, the appellant Jonathan Shepherd went to high school football game to watch one of his sons play football. Jonathan brought his family including his wife Susan Shepherd to the game. Jonathan's son Trenton was three years old at the time. Trenton lived with his mom Cheyanne Green. During the game, Cheyanne let Jonathan know that she would be coming to pick up Trenton. Jonathan agreed to meet Cheyanne in parking lot with Trenton. ***See States Ex. 9***

At the agreed upon time, Jonathan walked Trenton to the parking lot. When he arrived in the parking lot he saw Cheyanne's car. Cheyanne greeted Jonathan and Trenton and they went to Jonathan's truck to change Trenton's diaper. While they were at the truck, Jonathan grabbed his glock .357 because he was concerned that Cheyanne might try to have her brother do something to him. Jonathan walked Cheyanne and Trenton to her car. ***See States Ex. 9*** They placed Trenton in the backseat of the car. Cheyanne got into the front seat of the car. Jonathan leaned into the car and kissed Trenton good bye. As Jonathan was getting ready to get out of the car he began having chest pain and asked Cheyanne if she knew what a heart attack felt like. ***See States Ex. 9*** He asked Cheyanne to take him to

the ER. Cheyanne told him "no" and began to dial Susan'. Jonathan became upset because Cheyanne would not take him to the hospital and felt that she was being indifferent and he leaned over the seat with the gun and say "hey just go we need to go now". *See States Ex. 9* Jonathan told Cheyanne to drive the car. Cheyanne did not drive the car instead, she sat in the car telling Jonathan to put the gun away. Cheyanne opened the door to get out of the car and Jonathan fired a shot to get Cheyanne's attention. Jonathan got out of the back seat and went to side of the car where Cheyanne was on the ground and he discharged his gun in her direction and got into his truck. *See States Ex. 9*

Jonathan was hysterical he called Susan and told her he had messed up and to go and get Trenton. Jonthan told Susan that he had discharged his firearm but he did not know if had hurt Cheyanne or not. *See States Ex. 9* Jonathan drove around thinking about committing suicide. Jonathan came to the police station and surrendered himself. *See States Ex. 9*

Jonathan was arrested Lt. Benge questioned Jonathan on video without reading him any of the warnings required by 38.22 of Tex. Code Crim. P. After questioning Jonathan Captain Benge spoke with the District Attorney and informed him that he did not give Jonathan the 38.22 warnings on the video tape.

**APPELLANT'S BRIEF; 06-15-00064-CR**

After that Captain. Benge he retrieved Jonathan from his cell and continued his questioning but this time he read the 38.22 warning and told Jonathan to sign the waiver. Jonathan asked Captain. Benge "why are we having to go through this again" and was told Well they just wanted to….

# Summary of Argument

The trial court committed reversible error in at least three areas of the trial. First, the trial court misapplied the forfeiture by wrong doing statute in violation of the 6th Amendment. Specifically, the trial court made a finding of forfeiture by wrongdoing without receiving any evidence at the hearing to determine whether forfeiture by wrongdoing occurred. This resulted in the admission of otherwise inadmissible testimonial and hearsay evidence. This is Constitutional error. Second, the trial court failed to give the lesser included instruction of felony-murder even though it was specifically raised by the defendant's own statement. Finally, the trial court committed reversible error by allowing in defendant's statement although he had not been given the statutory warnings under §Tex. Code Crim. 38.22.

## A. TRIAL COURT FAILED TO HONOR DEFENDANTS SIXTH AMENDMENT CONFRONTATION RIGHTS WHEN IT RELIED UPON TEX. CODE CRIM. P. 38.49

The trial court denied the appellant is his Sixth Amendment confrontation rights because the trial court believed the appellant was responsible for the death of decedent. The Supreme Court in *Giles v. California* recognized "forfeiture by wrong doing" it limited its application to situations where evidence demonstrated that the defendant intended to prevent the decedent from testifying as opposed to situations where a decedent is unavailable because of the defendant's wrongful act.

The State's first witness was Melba Baxter. Ms. Baxter is an attorney who represented Cheyanne Green in seeking a protective order between Ms. Green and appellant Shepherd. ***See State's Ex 2-4*** The appellant objected to Ms. Baxter's testimony and the accompanying exhibits as violating the defendant's confrontation rights and constituting hearsay. See. ***R.R. Vol. 8, p. 26-32.***

The Court dismissed the jury and convened a hearing. At a hearing outside of the presence of the jury, the trial court made a sua sponte finding of forfeiture by

wrongdoing under Texas Code of Crim. Proc § 38.49. ***R.R. Vol . 8 p. 30, ln 22- p. 31 ln 11***. No new or additional evidence was admitted at the hearing outside of the presence of the jury and the trial court relied solely upon a previously viewed statements of the defendant. ***See R.R. Vol 8 p. 31 ln 6-11 "the fact that I have had the opportunity to review that evidence – now I can you know- I believe that will take care of evidence that I would need to hear to make that determination, the defendants own statement".*** The statement relied upon by  was offered without objection at a pretrial hearing on a motion to suppress to determine the admissibility of the statements[1]. ***See R.R. Vol.  3, p.52-99***. The state never contended that either statement standing alone supported a finding of forfeiture by wrong doing.

The appellant objected to this procedure noting that the Court had not heard evidence as required by Tex. Code Crim. P. § 38.49. ***"There's literally been no evidence heard so the Court is not in a position to make a preponderance finding Beyond that I think you still have the issue of Giles in the Sixth Amendment confrontation which the state is saying we are relying on forfeiture***

---

[1] There were two exhibits offered at the pretrial hearing that contain statements of the defendant. At the pretrial hearing they were admitted for the purpose of that hearing *See.R.R. Vol 3, .62; Pretrial Exhibit 5, 6*

*by wrong doing*" **See R.R. Vol 8, p. 29** The Court granted a running objection as to

Ms. Baxter's testimony and the exhibits she sponsored. *Id.²*

The finding of forfeiture by wrong doing destroyed the Appellant's ability

challenge not only testimonial statements but all statements ever made by the

decedent regarding alleged past abuse. Mr. Shepherd was convicted before the

trial ever started because he was prevented from using confrontation and hearsay

objections. Thereafter, Ms. Baxter was permitted to testify and the Court

admitted the prior sworn affidavit of the decedent which was filed in an Ex Parte

Proceeding. **See R.R. Vol 8, p. 37-40; State's Exhibit 2**. The affidavit was then

read by the witness.

The Court overruled the 6th Amendment confrontation objection and granted a

running objection to testimony and exhibits. Thereafter, Ms. Baxter was

permitted to testify and the Court admitted the prior sworn affidavit of the

decedent which was filed in an Ex Parte Proceeding. **See R.R. Vol 8, p. 37-40;**

**State's Exhibit 2**. The affidavit was then read by the witness. After admission of

the testimonial affidavit in support of the protective order, the Court admitted an

---

² After Ms. Baxter testified, the running objection was expanded to include all witnesses and exhibits. *See R.R. Vol. 8, p. 87-90*
**APPELLANT'S BRIEF; 06-15-00064-CR**

audio recording of an alleged argument between Cheyanne and Jonathan that Ms. Baxter alleged she received from Cheyanne. *See State's Ex. 4*

The fact that a statement qualifies under a hearsay exception, such as an excited utterance under rule of evidence 803(2), does not necessarily free it from the strictures of the Confrontation Clause. See *McCarty v. State, 227 S.W.3d 415, 417 (Tex.App.-Texarkana 2007), aff'd, 257 S.W.3d 238 (Tex.Crim.App.2008)*; see also **Tex.R. Evid. 803(2)** (providing a hearsay exception for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Rather, the event giving rise to an excited utterance informs the Confrontation Clause analysis and sheds light on the inquiry as to the statement's testimonial nature. See *Wall, 184 S.W.3d at 740;* **McCarty, 227 S.W.3d 418;**

The Confrontation Clause guarantees the right of an accused "to be confronted with the witnesses against him." See **U.S. Const. amend. VI; Shelby v. State, 819 S.W.2d 544, 546 (Tex.Crim.App.1991)**(en banc). This right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment. **Shelby, 819 S.W.2d at 546.** The primary interest

protected under the Confrontation Clause is the right of cross-examination. **See id**.

In Crawford, the United States Supreme Court explored the parameters of this right and concluded it was a violation of the Sixth Amendment for a court to admit testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the defendant was afforded a prior opportunity for cross-examination. **Crawford, 541 U.S. at 68**; see also **De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.2008).** In Crawford, the Court explained that generally a statement should be considered "testimonial" if it constitutes a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." **Crawford, 541 U.S. at 51**. Additionally, the Court explained that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id.; see also *Giles v. California, 554 U.S. 353, 376, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008); Davis v. State, 268 S.W.3d 683, 710 (Tex.App.-Fort Worth 2008, pet. ref'd)*. While the Court in Crawford declined to provide a comprehensive definition of "testimonial" evidence, it noted that certain classes of "core" statements are regarded as testimonial, including: ex

parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, ... extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, ... statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" **Id. at 51–52** "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." **Id. at 52.**

The affidavit of Cheyenne Green is unquestionably testimonial because it is sworn testimony included in an ex-parte court proceeding. *See States Ex. 2 (unnumbered pages 9-10 entitled "Affidavit in Support of Ex Parte Relief" contained within State's Ex. 2); R.R. Vol. 8, p. 36, ln 22- p 40, ln13 ("I want to direct your attention here to the affidavit"*… **signed***; R.R. Vol. 8, p.41-45 (reading of the affidavit)*. Along these same lines, Ms. Green's subsequent allegations of abuse to responding police officers are testimonial.

The testimony of Melba Baxter and the affidavit of Cheyenne Green are illustrative examples of the character of evidence the trial court admitted. The jury received the following additional objectionable evidence:

1. Testimony of Melba Baxter- decedent's attorney who was told allegations of abuse by decedent

2. Application for Protective Order including sworn affidavit of past allegations of abuse

3. Testimony of Officer Racey Turner regarding responding to call and conversations with decedent regarding alleged past abuse- *See R.R. Vol. 10, p, 210-214*

4. Testimony of Kathy Hedgewood, reporting an instance of alleged domestic violence *See R.R. Vol. 10., p. 19-197*

5. Testimony of Sandra Bass Hunter reporting discussion with decedent **R.R. Vol 10, p. 253**

The trial court erred in making a blanket finding of forfeiture by wrongdoing for the following reasons (1) the defendant's statement was not legally sufficient to establish forfeiture by wrong doing because even considered

**APPELLANT'S BRIEF; 06-15-00064-CR**

in the light most favorable to the ruling the statement failed to establish that the defendant acted with an intent to prevent the decedent from testifying as required by *Giles*. **See State Ex. 9**.   (2) the trial court's method of relying on a statement admitted in another hearing for another purpose runs afoul of due process because the parties are entitled to notice of the purpose for which evidence is being offered or considered (3) the trial court's application of Tex. Code Criminal Procedure 38.49 violates the Constitution because it allows admission of unconfronted testimonial statements

Appellant acknowledges that in viewing the statement one could conclude that the appellant "wrongfully procured the unavailability of a witness" as set forth in Tex. Code Crim P. 38.49 (a). The State of Texas thus, is in the exact same position as the State of California in *Giles.* **See Giles. v. California, 554 US 353, 358 (2008)(The State…. maintains…. that the Sixth Amendment did not prohibit prosecutors from introducing the statements because an exception to the confrontation guarantee permits the use of a witness's unconfronted testimony if a judge finds, as the judge did in this case, that the defendant committed a wrongful act that rendered the witness unavailable to testify at trial)"**

**APPELLANT'S BRIEF; 06-15-00064-CR**

The *Giles* court devoted attention to the exact language used in the Texas statute. *See Giles* at 360-361 (*discussing definition of "procure"*). The Court concluded that "the manner in which the rule was applied makes plain that unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying. In cases where the evidence suggested that the defendant had caused a person to be absent, but had not done so to prevent the person from testifying—*as in the typical murder case involving accusatorial statements by the victim*—the testimony was excluded unless it was confronted "***Id. At 361 ( emphasis added)***. This is the exact situation complained of to the trial court and presented for review here. The result should be the exact same. The reversal of the trial court's decision.

To the extent this Court upholds the trial court's application of Tex Code of Crim. 38.49, appellant challenges the Constitutionality of the statue as applied[3]. Specifically, appellant contends that application of the statute denied the defendant his Sixth amendment confrontation rights as set forth in *Giles v. California.* The plain reading of the statute abolishes Sixth Amendment confrontation protections in any instance where any defendant bears any responsibility for the absence of the

---
[3] Tex. Code Crim P. §38.49 became law in 2013 but counsel has not located an interpretative decisions on the statute.

**APPELLANT'S BRIEF; 06-15-00064-CR**

witness regardless of motivation. Specifically, the statute does not require a court

make any finding with respect to the defendant's motivation.

> a) A party to a criminal case who wrongfully procures the
> unavailability of a witness or prospective witness:
>
> (1) may not benefit from the wrongdoing by depriving the trier of
> fact of relevant evidence and testimony; and
>
> (2) forfeits the party's right to object to the admissibility of
> evidence or statements based on the unavailability of the witness as
> provided by this article through forfeiture by wrongdoing.
>
> *See Tex. Code Crim P.  38.49(a)*

The threshold for the determination appears to be the lowest evidentiary threshold

known to the Texas legal system. The statute does not even require reliability of a

statement.  Literally an anonymous bubble gum wrapper with "he did it" scrawled

on the inside would be enough for a determination of forfeiture by wrongdoing

under the literal wording of the statute. While the statue is silent as to what would

be required it to show a forfeiture by wrongdoing, it explicitly does away with

reliability, criminal conduct and sole intent to cause unavailability.  *See Tex. Code*

*Crim. P. § 38.49(d)* Given the vast differences of opinion on matters such as which

is the best sports team in this State, it is difficult to imagine a scenario where a

statute this vaguely written could be consistently applied across the great State of

**APPELLANT'S BRIEF; 06-15-00064-CR**

Page **21** of **33**

Texas.     A state statute implementing a federal Constitutional principal can give more but not less Constitutional protection than its federal counterpart.

> In the first place, it is to be remembered, that the general government is not to be charged with the whole power of making and administering laws. Its jurisdiction is limited to certain enumerated objects, which concern all the members of the republic, but which are not to be attained by the separate provisions of any. **See James Madison, Federalist Paper XIV, 1787**

Because the statute's application permitted admission of testimonial evidence without the defendant having enjoyed the right of confrontation or the State having demonstrated a constitutional forfeiture by wrong doing as set forth in *Giles,* the application violated the appellant's Sixth amendment rights.

## B. REFUSAL TO GIVE LESSER INCLUDED JURY INSTRUCTION OF FELONY MURDER

The appellant requested a jury instruction on felony murder and the trial court denied the request. *See R.R. Vol.  12, p. 148, ln17-24; p. 157-159* A two-step test applies when assessing whether a charge on a lesser-included offense should be given. *Feldman v. State, 71 S.W.3d 738, 750 (Tex.Crim.App.2002).* The first step

**APPELLANT'S BRIEF; 06-15-00064-CR**

is to determine whether the offense is actually a lesser-included offense of the offense charged. **Id.** Murder is a lesser-included offense of capital murder. **Id.** Felony murder is a lesser-included offense of capital murder. **Fuentes v. State, 991 S.W.2d 267, 272 (Tex.Crim.App.), cert. denied, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999)**. The first prong of the test is satisfied.

The second step of the test requires that the record contain some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. **Feldman, 71 S.W.3d at 750.** There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. **Id.** The element distinguishing capital murder from felony murder is the intent to kill. **Fuentes, 991 S.W.2d at 272**. Felony murder is an unintentional murder committed in the course of committing a felony while capital murder includes an intentional murder committed in the course of a predicate felony offense. To be entitled to an instruction on felony murder there must be some evidence that would permit a jury rationally to find the defendant had the intent to commit kidnapping or attempting kidnapping but not to cause the death of the victim.

APPELLANT'S BRIEF; 06-15-00064-CR

The defendant's own statement reflects that he "fired the gun but never meant to hit her only to get her attention" *See States Ex. 9, p. 5 ln 180-183* and that upon exiting the vehicle he "fired in her direction" but couldn't say that he pointed the gun at her." **Id at ln 202-222**; "I discharged my firearm but I don't know if I hurt her or not" **ld ln 231** and "I didn't mean for any of this to happen". *See R.R. Vol 9, p. 17-20; State's Exhibits 9 ln 281-291.* These statements are clearly consistent with an unintentional killing. This evidence easily meets the definition of committing an act clearly dangerous to human life as set forth in Texas Penal Code 19.02(3).

Beyond this the evidence showed that this homicide happened on a child exchange during a high school football game wherein the defendant was watching a football game with his family. **See States's Ex. 9, p. 2** The defendants reason for contacting the decedent was the exchange of their child. **Id** The defendant armed himself out of fear from past threats made against him. **Id. p. 3**

Having established error in the trial court's jury charge, appellant directs the Court to past case law guiding its evaluation of the record to determine whether appellant was harmed. *Hamel v. State, 916 S.W.2d 491, 494 (Tex.Crim.App.1996) (citing Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App.1984)).* When the defendant raises a proper objection at trial, reversal is required if the error is

reasonably expected to harm the defendant. ***Almanza, 686 S.W.2d at 171; Aguilar v. State, 914 S.W.2d 649, 651 (Tex.App.-Texarkana 1996, no pet.)***. The presence of any harm, regardless of degree, is sufficient to require reversal. **Abdnor v. State, 871 S.W.2d 726, 732 (Tex.Crim.App.1994)**. With no burden of proof, the reviewing court's determination is made simply from a review of the record. See **Warner v. State, 245 S.W.3d 458, 464 (Tex.Crim.App.2008); Ngo v. State, 175 S.W.3d 738, 750 n. 48 (Tex.Crim.App.2005)**. The "defendant must have suffered 'some' actual, rather than theoretical, harm from the error." **Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App.1986)**

The state cited *Hudson* in arguing against the felony murder instruction in this case. However, the State did not correctly advise the trial court of the ultimate holding in *Hudson*[4] **See R.R. Vol. 12, p. 157 ln 17-25 ( state arguing :" if the evidence on which the defendant relies upon situates somewhere between the charged offense and the lesser included they wouldn't be entitled to the lesser")**

It is true that in evaluating harm regarding the failure to submit a lesser-included offense the Court should take into account the existence of any lesser-

---

[4] Hudson's focus is on the harm analysis of a failure to give an instruction where the defendant is entitled to the instruction.

**APPELLANT'S BRIEF; 06-15-00064-CR**

included offenses that were submitted and that the jury's rejection of submitted lesser-included offenses could render error with respect to the unsubmitted lesser-included offense harmless *See  Saunders v. State 913 S.W.2d 564, 569–74 (Tex.Crim.App.1995)*;   *See Hudson v. State, 366 S.W.3d 878, 891–92 (Tex.App.-Texarkana 2012), rev'd, 394 S.W.3d 522 (Tex.Crim.App.2013);*  However that is not the case here.

Here, there is no intermediate offense between capital murder and murder. Thus *Hudson*'s discussion is largely inapplicable because no intermediate offense will preclude the entitlement to the felony-murder instruction nor render the failure to give it harmless. *See Hudson v. State 449 S.W.3rd 495 (Tex. Crim. 2014)*

In Hudson, the defendant did not request a felony-murder instruction. In this case there are alternate methods of committing murder which are necessarily distinct as defined by statute and defendant is entitled to both instructions because they are both raised by the evidence.

In this case, the indictment alleged capital murder with alternate methods of committing the offense.  The first paragraph alleged capital murder by attempted kidnapping or kidnapping and the second paragraph alleged capital murder by attempted obstruction or obstruction. *See C.R. p.8*.  The Court's charged contained

both methods of committing capital murder. *See C.R. p. 311.* The Court's charge should have contained both methods of committing murder.

## C. ADMISSION OF STATEMENT DESPITE LACK OF 38.22 WARNINGS AT THE INITATION OF THE INTERROGATION

On January 20, 2015 the trial court conducted a pretrial hearing on the defendant's motion to suppress. At the hearing the State called Captain Ron Benge to explain how he took the statements from Jonathan Shepherd. Captain Benge testified that he had been in law enforcement since 1977 and he recalled on the day in question that after Jonathan was brought into the police station he went to him and read him his rights in the middle office of the patrol section and showed him the warning and had him initial them. Benge testified that after giving Jonathan the Miranda warnings he was asked no questions. **See. R.R. Vol. 3 p. 55-.** The warning Captain Benge is describing is simply a warning contemporaneous with an arrest. The absence of questioning contemporaneous with the warning militates against the likelihood the one would have understood any warning to apply to any particular questioning

**APPELLANT'S BRIEF; 06-15-00064-CR**

The first interview is captured on States Pretrial Exhibit 5. With respect to this exhibit the State stipulated that it was not admissible because it did not contain the 38.22 warning. **See R.R. Vol. 3, p. 60 "the state stipulates to the Court that the first statement or interview of the accused or the defendant Jonathan Shepherd would not be offered by the State during guilt/innocence phase of these proceedings…. I want the Court to be aware that there's two statements involved in this case, statement number one is acknowledged and stipulated by the states, will not be used or attempted to be used through any witness or this video played**

The continuation of the interview appears with the midstream warnings appears on *State's Pretrial Ex. 6* The investigating officer employed a two-step interrogation method in question Jonathan Shepherd. Specifically, Shepherd was not read his Miranda warnings during the first part of the interview with Captain. Ron Benge. Captain Benge testified that upon realizing that the warnings were not read to Shepherd, the district attorney advised him to restart the interview because the first interview violated the law *See R.R. Vol. 3, p. 79-80* . Thus, approximately 35 minutes after ending questioning of Jonathan Shepherd, Captain Benge reinitiates the contact *See R.R. Vol. 3, p. 79* . During this contact, Jonathan is told by Captain Benge to sign his name and date of birth as opposed to being asked

APPELLANT'S BRIEF; 06-15-00064-CR

whether he would waive he his rights. *See State's Ex. #9; State's Pretrial Exhibit 6*

Immediately Jonathan ask Captain Benege "Why we having to go through this again" *See State's Ex. 9[5]; State's Pretrial Ex. 6*. Captain Benge responds "Just because they wanted to". Although, Captain Benge had been told by the District Attorney that his questioning of Jonathan broke the law, he did not inform Jonathan truthfully when asked the question about the need to go through this again. Thus, Jonathan did not know that the statements he made just minutes earlier could not be used against him.  In the two-step analysis this weighs heavily against a finding that the second statement could be independent voluntarily made because the captain provided false information about the critical question "why are we having to go through this again".  Moreover, the notion that this is a severable statement is simply at odds with the reality. Captain Benege and Jonathan Shepherd make references to the prior unwarned statement. "I still have all the other stuff about, you know –all the other information about how you-your heart was broken and everything and I still have all that……. So we'll just go to

---

[5] State's Exhibit 9 was not used at the suppression hearing. The exhibit is a transcript of the statement which was admitted during the trial as an exact transcription of the statement.  The statement at trial was admitted as State's Ex. 8. Thus, State's Pretrial Exhibit 6 and trial exhibit 8 are copies of the same statement which is transcribed in State's Exhibit 9. The transcription is used her convenience of the reader and writer.

**APPELLANT'S BRIEF; 06-15-00064-CR**

tonight… well just go to where you and (Trent) were at the ball game and ya'll were coming and out and just tell me what happened then" *See State's Pretrial Ex. 6 State's Ex. 9 p.1-2 ;lns43-59*

There are a series of Supreme Court and Texas Court of Criminal Appeals cases issues surrounding what is commonly known as a two-step interrogation process. *See Carter v. State, 309 SW 3ʳᵈ 31 (Tex. Crim. App, 2010)*.

In Carter, the Court of Criminal Appeals took up the question first, warn later line of cases and addressed a variety of circumstances which occur. The overall question in reviewing a statement is whether the totality of the circumstances the statement is voluntary. In determining the voluntariness of a defendant's written statement, police falsehoods are relevant. **Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969); Green v. State, 934 S.W.2d 92, 99 (Tex.Crim.App.1996)**. However, "[t]rickery or deception does not make a statement involuntary unless the method [is] calculated to produce an untruthful confession or [is] offensive to due process." **Creager, 952 S.W.2d at 856; Jeffley v. State, 38 S.W.3d 847, 860 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd)**. Indeed, the effect of a lie "must be analyzed in the context of all the circumstances of the interrogation." **Miller v. Fenton, 796 F.2d 598, 607 (3rd Cir.1986); accord Frazier, 394 U.S. at 737–39, 89 S.Ct. at 1424–25.** In this

**APPELLANT'S BRIEF; 06-15-00064-CR**

case lying about the reason for the continuation for the statement brought about its repetition and subsequent admission. This action offends the notions of due process because it undermines the value of the warnings themselves. Thus appellant request that this Court enter an order (1) finding that there is one continuous statement (2) the statement did not contain the appropriate warnings under Tex. Code Crim. P. § 38.22(3)(a)(2)(a) at the beginning of the recording as required by Texas law (3) as result the statement is inadmissible (4) the state failed to prove that the statement was voluntarily given.

## PRAYER

**WHEREFORE**, appellant prays that this Court upon review of this matter reverse the judgment of the trial court for the reasons set forth herein and remand this matter back to the trial court for reconsideration in light of this Court's ruling.

Respectfully submitted,

The Law Office of Russell Wilson II
1910 Pacific Ave
Dallas, TX 75201
Tel: 4695730211
Fax: 972-704-2907
E: russell@russellwilsonlaw.com


By:/S/ Russell Wilson II_____
Russell Wilson II
State Bar No. 00794870
Attorney for **JONATHAN RAY SHEPHERD**


## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Texas Rule of Appellate Procedure 9.4(2)(B) and the brief is 5,501 words in Microsoft Word 2016.


S/ Russell Wilson II_____
Russell Wilson II

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 14, 2015, a true and correct copy of the above and foregoing document was served on the Upshur County District Attorney's Office, by email through the efile service.

S/ Russell Wilson II_____
Russell Wilson II

**APPELLANT'S BRIEF; 06-15-00064-CR**